# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TRUJILLO, | Case No. 1:21-cv-00342-NONE-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE |
| v. | |
| HARSARB, INC., et al., | (ECF No. 12) |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## INTRODUCTION

Currently before the Court is Plaintiff Jose Trujillo's ("Plaintiff") motion for default judgment filed on July 16, 2021. (ECF No. 12.)[1] On August 25, 2021, the Court held a hearing on the motion for default judgment, at which no appearances were made on behalf of Defendants Harsarb, Inc., dba A1 Step & Save ("Harsarb Inc."), and Harsarb Firm, LLC ("Harsarb Firm") ("Defendants"). Having considered the moving papers, the declarations and exhibits attached thereto, arguments and non-appearance at the August 25, 2021 hearing, as well as the Court's file, the Court issues the following findings and recommendations recommending denying Plaintiff's motion for default judgment without prejudice for inadequate service.

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

## II.

## BACKGROUND

### A.   Procedural History

Plaintiff filed this action on March 5, 2021.  (ECF No. 1.)  On April 29, 2021, executed summonses were filed with the Court which proffer that Defendants were served on March 31, 2021.  (ECF Nos. 4, 5.)

Defendants have not filed answers, any responsive pleading, or otherwise appeared in this action.  On May 14, 2021, Plaintiff filed a request for entry of default against Defendants.  (ECF No. 8.)  On May 14, 2021, default was entered against both Defendants.  (ECF Nos. 9, 10.)  On July 16, 2021, Plaintiff file the motion for default judgment that is currently before the Court. (ECF No. 8.)  On August 25, 2021, the Court held a hearing via videoconference, with the courtroom open to the public.  Counsel Tanya E. Moore appeared via video on behalf of Plaintiff.  Nobody appeared on behalf of Defendants in person nor on the public access telephone line, despite the courtroom being open to the public.

### B.   Plaintiff's Allegations in the Operative Complaint

Plaintiff brings this action against Defendants alleging violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181, *et seq.*, as amended by the ADA Amendments Act of 2008 (P.L. 110-325) (the "ADA"), and California's Unruh Civil Rights Act, California Civil Code § 51, *et seq.* (the "Unruh Act").  (Compl., ECF No. 1; Pl.'s Mem. P. & A. Supp. Mot. Default J. ("Mem."), ECF No. 12-1.)  Plaintiff alleges that he is substantially limited in his ability to walk, uses a wheelchair or cane for mobility, and also has substantially limited hearing. (Compl. ¶ 8.)  As a result, Plaintiff claims he is physically disabled as defined by all applicable California and United States laws, and is a member of the public whose rights are protected by such laws.  (Id.)

Defendants own, operate, and/or lease A1 Step & Save, located at 403 North Mercey Springs Road, Los Banos, California 93635 (the "Facility").  (Compl. ¶¶ 1, 7.)  The Facility is open to the public, intended for non-residential use, its operation affects commerce, and thus the Facility is a public accommodation as defined by the applicable laws.  (Compl. ¶ 9.)  Plaintiff

frequently travels to where the Facility is located and visited the Facility on or about January 17, 2021, to purchase fuel for his vehicle.  (Compl. ¶ 10.)  During his visit to the Facility, Plaintiff encountered several barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges, and accommodations offered at the Facility.  (Id.)

First, Plaintiff claims he could not find a designated fuel pump, then parked at the closest pump to the store entrance and honked several times for fueling assistance, but no one came out.  (Id.)  Plaintiff observed that the pavement around the fuel pump and along the path of travel to the store entrance was uneven with large cracks and gaps.  (Id.)  Plaintiff decided it would be too difficult to traverse the parking lot in his wheelchair, so he decided to use his cane instead, but it was still hard to make his way over the uneven pavement to the store entrance.  (Id.)

Second, Plaintiff claims the store entrance door was heavy and difficult for Plaintiff to open.  (Id.)  Third, Plaintiff claims the aisles inside the store were too narrow, which made it difficult for Plaintiff to make his way around even using his cane, and that it was particularly hard to get to the beverage station.  (Id.)  Fourth, Plaintiff claims the beverage station cups were stacked high and it was hard for Plaintiff to reach them while balancing himself with his cane.  (Id.)  Fifth, Plaintiff claims the transaction counter was too high, which made it hard for Plaintiff to pay for his purchase, and it was difficult for him to balance using his cane while reaching over the counter.  (Id.)

Plaintiff claims he was, and continues to be deterred from visiting the facility because he knows the goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to his physical disabilities.  (Compl. ¶ 12.)  Plaintiff also claims that he enjoys the goods and services offered, and will return once the barriers are removed.  (Id.)

Plaintiff brings claims for: (1) violation of the ADA; (2) violation of the Unruh Act; and (3) denial of full and equal access to public facilities under California's Health and Safety Code. (Compl. ¶¶ 16-46.)

**C.    Relief Sought**

Plaintiff sought the following relief in the complaint: (1) injunctive relief, preventive

relief, or other proper relief; (2) statutory minimum damages under the Unruh Act; (3) attorneys' fees, expenses, and costs; (4) interest; and (5) other proper relief as deemed by the Court. (Compl. at 8-9.)   In moving for default judgment, Plaintiff specifically seeks: (1) judgment against Defendants on all claims, with an injunction requiring Defendants to remove the architectural barriers encountered; (2) statutory damages in the amount of $4,000; and (3) attorneys' fees and costs in the amount of $4,435, plus fees as a result of counsel's appearance at the hearing on this matter.  (ECF No. 12 at 2; Mem. 9-10.)

### III.

### LEGAL STANDARD FOR DEFAULT JUDGMENT

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rules of Civil Procedure 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Federal Rule of Civil Procedure 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
> > (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> > > (A) conduct an accounting;
> > >
> > > (B) determine the amount of damages;
> > >
> > > (C) establish the truth of any allegation by evidence; or

4

1  (D) investigate any other matter.

2

3  Fed. R. Civ. P. 55.

4      The decision to grant a motion for entry of default judgment is within the discretion of the

5  court.  PepsiCo, Inc. v. California Security Cans, 238 F.Supp. 1172, 1174 (C.D. Cal. 2002).  The

6  Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may

7  consider in exercising its discretion:

8          (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive
           claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the
9          action; (5) the possibility of a dispute concerning material facts; (6) whether the
           default was due to excusable neglect, and (7) the strong policy underlying the Federal
10         Rules of Civil Procedure favoring decisions on the merits.

11  Eitel, 782 F.2d at 1471-72.

12      Generally, once default has been entered, "the factual allegations of the complaint, except

13  those relating to damages, will be taken as true."  Garamendi v. Henin, 683 F.3d 1069, 1080 (9th

14  Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed.

15  R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if

16  a responsive pleading is required and the allegation is not denied.").  Accordingly, the amount of

17  damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v.

18  Nop, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008).  Additionally, "necessary facts not contained in

19  the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v.

20  Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted).

21  The relief sought must not be different in kind or exceed the amount that is demanded in the

22  pleadings.  Fed. R. Civ. P. 54(c).

23                                    **IV.**

24                                **DISCUSSION**

25      The Court first determines whether the Court properly has jurisdiction in this matter, and

26  then turns to the Eitel factors to determine whether default judgment should be entered.

27  / / /

28  / / /

**A.    Jurisdiction**

1.    <u>Subject Matter Jurisdiction</u>

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress.  <u>U.S v. Sumner</u>, 226 F.3d 1005, 1009 (9th Cir. 2000).  Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.'  "A case 'arises under' federal law either where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law."  <u>Republican Party of Guam v. Gutierrez</u>, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting <u>Franchise Tax Bd. v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 8–9 (1983) (citations omitted)).  "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  <u>Republican Party of Guam</u>, 277 F.3d at 1089 (citations omitted).

Plaintiff brings this action alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.  Therefore, the Court has original jurisdiction under 28 U.S.C. § 1331.  In addition, the Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's related state law claims.

2.    <u>The Court finds Service of Process on Defendants to be Inadequate and Recommends Denial of Default Judgment for Failure to Prove Service</u>

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment.  See <u>J & J Sports Prods., Inc. v. Singh</u>, No. 1:13-CV-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); <u>Penpower Tech. Ltd. v. S.P.C. Tech.</u>, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); <u>Mason v. Genisco Tech. Corp.</u>, 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action.").

A corporation, partnership, or association may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent

1  authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).

2  Service on a corporation, partnership, or association may also "be made . . . pursuant to a

3  method under state law in the state where the district court is located, or where service is made."

4  Fed. R. Civ. P. 4(h).

5      In California, a corporation may be served by delivery to the person designated as an

6  agent for service of process, or to the "president, chief executive officer, or other head of the

7  corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer,

8  a controller or chief financial officer, a general manager, or a person authorized by the

9  corporation to receive service of process." Cal. Civ. Proc. Code § 416.10(a)-(b).  In California,

10  a general or limited partnership may be served by delivery: "to the person designated as agent

11  for service of process in a statement filed with the Secretary of State or to a general partner or

12  the general manager of the partnership."  Cal. Civ. Proc. Code § 416.40(a).  Other

13  unincorporated associations may be served by delivery: "to the person designated as agent for

14  service of process in a statement filed with the Secretary of State or to the president or other

15  head of the association, a vice president, a secretary or assistant secretary, a treasurer or

16  assistant treasurer, a general manager, or a person authorized by the association to receive

17  service of process." Cal. Civ. Proc. Code § 416.40(b).

18      In California, substitute service on the person to be served to effectuate service on a

19  corporation, partnership, or association may be made: "by leaving a copy of the summons and

20  complaint during usual office hours in his or her office or, if no physical address is known, at

21  his or her usual mailing address, other than a United States Postal Service post office box, with

22  the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons

23  and complaint by first-class mail, postage prepaid to the person to be served at the place where a

24  copy of the summons and complaint were left." Cal. Civ. Proc. Code § 415.20(a).

25      Here, the affidavits of service attest that Defendants were both served on March 31,

26  2021 by substitute service on Defendants' "Agent: Sarbjit Kaur by serving John Doe (refused

27  name), apparently in charge," at 4815 E. Butler Ave., Fresno, California 93727 (the "Butler

28  Address").  (ECF Nos. 4, 5.)  A copy of the documents were also mailed to Sarbjit Kaur at the

same Butler Address.  (Id.)  However, while California's Secretary of State's website confirms that the agent for service of process for both Defendants *is* Sarbjit Kaur, the address listed for the agent for service for both Defendants is 2348 S Walling Ave., Fresno, CA 93727 (the "Walling Address"), not the Butler Address that the process server attested to as completing service at.[2]  The proof of service for the motion for default judgment also reflects that the motion was served by postal mail to the Butler Address.  (ECF No. 12-7 at 2.)

At the hearing on this motion, the Court attempted to inquire of Plaintiff's counsel regarding the issue of service, however, Plaintiff's counsel was not prepared to discuss the case at hand despite appearing for the hearing.  In fact, Plaintiff's counsel appeared to be conducting her appearance from her vehicle, rather than her office, and did not have a copy of the case file, the docket filings, or ability to electronically access such information during the hearing on this motion.  Thus, while Plaintiff's counsel asked if supplemental briefing could be provided, the Court declined such request given the fact that counsel was not prepared to discuss the Court's concerns at the hearing even at a minimum level.  The fact that the Court gives any counsel who alternatives to appear (person or video), this does not equate to lesser expectations on how any counsel should be prepared.  The pandemic has changed many things, but not how one appears and is expected to be prepared in federal court.

Because no person named Sarbjit Kaur was confirmed to have been served, nor any person apparently in charge of the location at the Walling Address that is listed as the address for the designated agent, the Court cannot find that service has been effectuated through service on a "John Doe" at the Walling Address, sufficient for default judgment to be entered against them.  See Floyd v. Saratoga Diagnostics, Inc., No. 20-CV-01520-LHK, 2020 WL 3035799, at *3 (N.D. Cal. June 5, 2020) ("John Doe refused to identify himself, and thus Plaintiff was

---

[2]  Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts may take judicial notice of information displayed on government websites where neither party disputes the accuracy of the information contained therein.  Daniels –Hall v. National Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010).  Specifically, Courts routinely take judicial notice of information contained in the California Secretary of State's website.  See No Cost Conf., Inc. v. Windstream Commc'ns, Inc., 940 F. Supp. 2d 1285, 1296 (S.D. Cal. 2013); Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015); L'Garde, Inc. v. Raytheon Space & Airborne Sys., 805 F. Supp. 2d 932, 937 (C.D. Cal. 2011).

1    unable to ascertain whether John Doe was 'apparently in charge,' as required for substitute

2    service to be effective under Cal Code Civ. Proc. § 415.20(a) [substitute service on natural

3    person]."); <u>Dytch v. Bermudez</u>, No. 17-CV-02714-EMC, 2018 WL 2230945, at *3 n.2 (N.D.

4    Cal. May 16, 2018) ("Rather than re-serve the complaint, Plaintiff filed a revised proof of

5    service from the process server which recites, in a formulaic and conclusory fashion, that John

6    Doe was 'apparently in charge.'  The affidavit lacks factual detail.  It does not identify the

7    particular person served . . . Courts are also wary of proofs of service that do not identify on

8    whom service was made because 'if no ... receiving individual is specified on the return of

9    service, a movant [to set aside default judgment] has little or no basis on which to challenge the

10   alleged service of process.' ") (quoting <u>Homer v. Jones-Bey</u>, 415 F.3d 748, 754 (7th Cir. 2005))

11   (bracketed alteration in original); <u>TMX Logistics, Inc. v. FF Trucking, Inc.</u>, No.

12   CV1400873PSGASX, 2014 WL 12691618, at *1–2 (C.D. Cal. Sept. 5, 2014) ("However,

13   neither the declaration nor the relevant proof of service indicates that (1) Eduardo Fernandez,

14   agent of FF Logistics, was personally served; or that (2) Celeste Aguila is 'an officer, a

15   managing or general agent, or any other agent authorized by appointment or by law to receive

16   service of process' on behalf of FF Logistics."); <u>Coach Inc. v. Envy</u>, No. 1:11-CV-1029 LJO

17   GSA, 2012 WL 78238, at *2–3 (E.D. Cal. Jan. 10, 2012) ("Here, the proof of service indicates

18   that Envy was served by leaving the summons at Defendant's place of business with 'Ninehra

19   Babazade Ehsaralahn-store clerk (E IND., F., 21, BLK, 5′4 130 lbs) .'. . . There is no indication

20   that the store clerk is authorized to receive service under F. R. Civ. P. 4(h)."); <u>Schagene v.</u>

21   <u>Northrop Grumman</u>, No. 11 CV 1642 AJB NLS, 2012 WL 216531, at *2–3 (S.D. Cal. Jan. 24,

22   2012) ("Under Rule 4(h)(1)(B), valid service of process requires 'delivering a copy of the

23   summons and of the complaint to an officer, a managing or general agent, or any other agent

24   authorized by appointment by law to receive service of process.' . . .  Even if Ms. Davis had

25   been employed by Defendant as of the date of the attempted service of process, she was not an

26   officer, managing or general agent, or an agent authorized by law to receive service of process

27   on behalf of Defendant.").

28          It is true that service on "John Doe" or "Jane Doe" may be acceptable under certain

9

1   circumstances.  See J & J Sports Prods., Inc. v. Barksdale, No. CIV S-11-2994 JAM, 2012 WL

2   1353903, at *5 (E.D. Cal. Apr. 13, 2012) ("The mere fact that the service documents were left

3   with an unidentified adult is not fatal to the service, because courts have recognized that persons

4   in apparent charge of businesses often refuse to provide their names for purposes of service, and

5   that it is an accepted practice to name such a person by a fictitious name or by description [and]

6   [f]urthermore, the substituted service statute also has an additional safeguard built into the

7   process by requiring follow-up service by mail."), report and recommendation adopted, No.

8   2:11-CV-2994 JAM CKD, 2012 WL 2376284 (E.D. Cal. June 22, 2012).  However here, in the

9   absence of any information provided within the motion, counsel's declarations and lack of

10  proffer at the hearing, nor the proofs of service, regarding how the Butler Address was

11  ascertained, there is an insufficient showing that service could be effectuated on a "John Doe" at

12  an address not shown to be connected to Defendants or the registered agent in any manner.  See

13  Garcia v. Molina, No. 220CV08014ODWAGRX, 2021 WL 780476, at *2 (C.D. Cal. Mar. 1,

14  2021) ("For service to be proper, however, '[i]t is crucial that a connection be shown between

15  the address at which substitute service is effectuated and the party alleged to be served[,]' [and

16  while] Garcia claims that the Beverly Property is Molina's usual place of business . . . he fails to

17  put forth any evidence demonstrating a connection between Molina and that business [and]

18  merely states in conclusory fashion that an investigation confirmed it was Molina's 'most

19  consistent business address' without putting forth any evidence to support this claim.") (quoting

20  Corcoran v. Arouh, 24 Cal. App. 4th 310, 315 (1994));  Salazar v. Hoefel, No.

21  CV0410015FMCPJWX, 2005 WL 8156295, at *3 (C.D. Cal. May 4, 2005) ("Best was served,

22  not at its offices, but at the home of its agent for service of process.  The summons and

23  complaint were given, not to someone apparently in charge of the offices at Best, but to 'Jane

24  Doe Salazar,' who may or may not have any connection to Best . . . Neither personal or

25  substitute service were effective as to Best.").

26       Further, in cases where service on a "Doe" or other person challenged to not be

27  "apparently in charge' is accepted by the court, it is often completed at the address as listed on

28  the Secretary of State website, or there is no dispute that the address is that of the defendant to

be served, and/or it is clear that the defendant has actual notice of the lawsuit.  See <u>Esget v.</u>
<u>TCM Fin. Servs. LLC</u>, No. 1:11-CV-00062-AWI, 2014 WL 258837, at *4 (E.D. Cal. Jan. 23,
2014) ("While the California Secretary of State lists the Passions Boulevard address for
Defendant, substantial evidence indicates the Eastern Avenue address is Defendant's actual
address . . . Plaintiff appears to have successfully served Defendant by serving an individual
apparently in charge at the Eastern Avenue address on two separate occasions . . . [m]oreover,
Plaintiff's evidence of Defendant's actual notice of this lawsuit demonstrates that service was
proper under Rule 4."); <u>Tim Pao v. Liphan Lee</u>, No. CV136421DSFAJWX, 2013 WL
12203046, at *2 (C.D. Cal. Oct. 21, 2013) ("[T]he process server's affidavit adequately
describes John Doe as a person 'apparently in charge[,]' [and] [t]he Pico Boulevard address is
the registered entity address for Pao, Inc."); <u>Dist. Council 16 N. CA Health & Welfare Tr. Fund</u>
<u>v. Advanced Concrete Techs., Inc.</u>, No. C 08-04430 WHA, 2009 WL 1125874, at *1 (N.D. Cal.
Apr. 27, 2009) ("The proof of service indicates that 'substituted service' was executed on a John
Doe 'apparently in charge at the place of business,' and that the summons, complaint and other
documents were also sent by first-class mail[,] [s]ervice was executed on a California address on
file with the California Secretary of State for defendant (as well as an address of former-
defendant Raines) [and] counsel for plaintiffs served the request for entry of default on three
California addresses for defendant."); <u>Williams v. Cty. of Los Angeles Dep't of Pub. Soc.</u>
<u>Servs.</u>, No. CV 14-7625 JVS (JC), 2015 WL 5604584, at *6 (C.D. Cal. Aug. 26, 2015) ("[I]t
appears that plaintiff has presented prima facie evidence that [Veals was] properly served . . . in
the proof of service for defendant Veals, the process server attests that substituted service was
made on 'Jane Doe' a 'receptionist,' with the subsequent requisite mailing . . . defendants do not
dispute that the addresses at which plaintiff attempted service on defendants Veals . . .
substituted service can be made to individuals who are 'apparently in charge' (*i.e.,*someone
'more likely than not' to assure delivery of a complaint to the named party), not just those who
are specifically 'authorized to accept service' on a defendant's behalf."), <u>report and</u>
<u>recommendation adopted,</u> No. CV 14-7625 JVS(JC), 2015 WL 5601811 (C.D. Cal. Sept. 21,
2015); <u>J & J Sports Prods., Inc.</u>, , 2012 WL 1353903, at *5 ("Moreover, despite conceding that

1  the Tuolomne Street address is his office address, as well as the address listed on his filings with

2  this court, defendant Thompson fails to explain why he would not at least have received the

3  service papers subsequently mailed to him at that address . . . it is clear from his correspondence

4  with plaintiff's counsel and his filing of the instant motion that defendant Thompson had actual

5  notice of the action."); <u>Moment, LLC v. Mammoth Outdoor Sports, Inc.</u>, No.

6  316CV00297RCJVPC, 2017 WL 886976, at *5 (D. Nev. Mar. 6, 2017) ("Moment's process

7  server gave the papers to Courtney, a person he believed was a 'manager' at the address where

8  both Mammoth and SLI are located.").

9        For these reasons, the Court finds service is not adequate and recommends denying

10 Plaintiff's motion for default judgment without prejudice for inadequate service of the summons

11 and complaint.

12       While the Court finds the motion for default judgment should not be granted based on

13 insufficient service of process on the Defendants, the Court nonetheless proceeds to

14 consideration of whether the <u>Eitel</u> factors would otherwise weigh in favor of granting Plaintiff's

15 motion for default judgment, in the event the District Judge finds service is adequate based on

16 the current record, or through objections filed by Plaintiff to these findings and

17 recommendations.

18       **B.    The <u>Eitel</u> Factors Otherwise Weigh in Favor of Granting Default Judgment**

19       The Court finds that if it were to proceed on the basis that service was sufficient,

20 consideration of the <u>Eitel</u> factors would weigh in favor of granting default judgment in favor of

21 Plaintiff.

22       1.    <u>Prejudice to Plaintiff if Default Judgment is Not Granted</u>

23       Plaintiff filed this action on March 5, 2021, and Defendants were alleged to have been

24 served on March 31, 2021.  (ECF Nos. 1, 4, 5.)  If default judgment is not entered, Plaintiff, a

25 disabled individual, is effectively denied a remedy for the violations of the disability statutes

26 alleged until such time as the Defendants in this action decides to appear in the litigation, which

27 may never occur.  Defendants have not filed an answer, a motion to dismiss, or otherwise

28 appeared in the action; Defendants failed to file any opposition to the instant motion for default

1 judgment; and failed to make an appearance at the August 25, 2021 hearing held on the instant
2 motion. (ECF No. 13.)

3     For these reasons, the Court finds Plaintiff would be substantially prejudiced if default
4 judgment is not granted and finds this <u>Eitel</u> factor weighs in favor of granting default judgment
5 in favor of Plaintiff. <u>See</u> <u>Vogel v. Rite Aid Corp.</u>, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014).

6        2.      <u>The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint</u>

7     The second and third <u>Eitel</u> factors instruct the Court to evaluate the merits of the
8 substantive claims alleged in the complaint as well as the sufficiency of the complaint itself. It is
9 appropriate for the Court to analyze these two factors together. <u>AMUR Equip. Fin., Inc. v. CHD</u>
10 <u>Transp. Inc.</u>, No. 117CV00416AWISKO, 2017 WL 5477379, at *5 (E.D. Cal. Nov. 15, 2017);
11 <u>F.D.I.C. v. Quest, F.S., Inc.</u>, No. SACV 10-00710 DOC, 2011 WL 2560428, at *2 (C.D. Cal. June
12 27, 2011). In doing so, the Court looks to the complaint to determine if the allegations contained
13 within are sufficient to state a claim for the relief sought. <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388
14 (9th Cir. 1978).

15        a.      **Americans with Disabilities Act**

16     One of the purposes of the ADA is "to provide clear, strong, consistent, enforceable
17 standards addressing discrimination against individuals with disabilities." 42 U.S.C. §
18 12101(b)(2). "Congress enacted the statute on the premise that discrimination against the disabled
19 is 'most often the product, not of invidious animus, but rather the thoughtlessness and
20 indifference—of benign neglect.' " <u>Cohen v. City of Culver City</u>, 754 F.3d 690, 694 (9th Cir.
21 2014) (quoting <u>Alexander v. Choate</u>, 469 U.S. 287, 295 (1985)). "Therefore, the ADA proscribes
22 not only 'obviously exclusionary conduct,' but also 'more subtle forms of discrimination—such as
23 difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals'
24 full and equal enjoyment' of public places and accommodations." <u>Cohen</u>, 754 F.3d at 694
25 (quoting <u>Chapman v. Pier 1 Imps. (U.S.) Inc.</u>, 631 F.3d 939, 945 (9th Cir.2011)). "An ADA
26 plaintiff suffers a legally cognizable injury under the ADA if he is 'discriminated against on the
27 basis of disability in the full and equal enjoyment of the goods, services, [or] facilities . . . of any
28 place of public accommodation.' " <u>Chapman</u>, 631 F.3d at 952 (quoting 42 U.S.C. § 12182(a))

(alteration in original).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)). Discrimination under the ADA is defined to include "a failure to remove architectural barriers, . . . in existing facilities, . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). To state a claim for discrimination under the ADA because of denial of public accommodations due to "the presence of architectural barriers in an existing facility, a plaintiff must allege and prove that: '(1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable.' " Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006) (quoting Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000)); see also Wyatt v. Ralphs Grocery Co., 65 F. App'x 589, 590 (9th Cir. 2003).

i.      Plaintiff has Established he is Disabled under the ADA

Plaintiff must allege that he is disabled under the ADA. Molski, 481 F.3d at 730. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include walking, standing, and hearing. 42 U.S.C. § 12102(2)(A). Plaintiff alleges that he is substantially limited in his ability to walk, uses a wheelchair or cane for mobility, and is also has substantially limited hearing. (Compl. ¶ 8.) The Court notes that plaintiffs often submit a declaration attesting to their disability and interactions with the defendant's facility, however, no such declaration was provided here. Nonetheless, the Court takes the allegations contained in the complaint as true for purposes of default judgment.

Taking the allegations in the complaint as true for purposes of default judgment, Plaintiff has adequately established this element of his ADA discrimination claim.

ii.      Plaintiff has Established Defendants Own, Operate, or Lease a Public Accommodation

14

Plaintiff must allege that the Defendant "owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); Molski, 481 F.3d at 730. Plaintiff proffers the Facility is a place of public accommodation. (Compl. ¶ 9.)

The ADA provides that a "gas station" is considered a public accommodation. 42 U.S.C. § 12181(7)(F). Plaintiff alleges he visited the Facility to purchase gas on January 17, 2021. (Compl. ¶ 10.) The Court notes that there is no affirmation from counsel, or other submission that demonstrates how it was determined that Defendants are in fact the owners, operators, or lessees of the Facility, as commonly accompanies similar motions.

Taking the allegations as true for purposes of default judgment, the Court finds Plaintiff has sufficiently alleged that the Defendant owns or operates a place of public accommodation.

### iii. Plaintiff was Denied Public Accommodations due to an Architectural Barrier

Plaintiff must allege and prove that he was denied public accommodations by a defendant because of his disability. Molski, 481 F.3d at 730. Here, Plaintiff may establish such denial by demonstrating the facility presents an architectural barrier prohibited under the ADA, and the removal of the barrier is readily achievable. Hubbard, 433 F. Supp. 2d at 1138.

#### 1) Architectural Barrier

Congress entrusted the Attorney General with promulgating the implementing regulations for Title III. Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. § 12186(b)). Congress provided that these implementing regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") in 1991. Id. (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A). The Attorney General adopted the ADAAG as the "Standards for Accessible Design," and they lay out the technical structural requirements of places of public accommodation and are applicable during the design, construction, and alteration of such facilities. Id. (citing 28 C.F.R. Pt. 36, App. A). "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines." Chapman, 631 F.3d at 945.

Plaintiff proffers that because no discovery has occurred, Plaintiff does not know if the

1  Facility was constructed or had any alteration done after March 15, 2012, and therefore will apply

2  the 1991 ADAAG standards to determine whether a barrier existed at the time of his visit to the

3  Facility.  (Mem. 7.)  Plaintiff submits that the 2010 Standards now in effect will govern any

4  injunction which issues though, since the remedial work will be undertaken after March 15, 2012.

5  (Mem. 7.)

6          Plaintiff contends the pavement between the fuel pumps was uneven with large cracks and

7  gaps, causing difficulty to Plaintiff when traversing the route, and deterring him from using his

8  wheelchair, (Compl. ¶ 10(a)), and thus argues that Defendants failed to provide an accessible route

9  of travel with a proper level surface between elements of the Facility in violation of 1991 ADAAG

10  §§ 4.1.2(4) and 4.5, *et seq.*; 2010 Standards §§ 206.2.2 and 403, *et seq.*  (Mem. 7.)  While Plaintiff

11  alleged the store entrance door was heavy and difficult to open, for the purposes of this motion,

12  Plaintiff states he is not seeking injunctive relief regarding this barrier as it involves violations of

13  state accessibility standards, not federal.  (Mem. 8.)  Plaintiff alleges the aisles inside the store

14  were too narrow, (Compl.,¶ 10(c)), and thus argues Defendants failed to provide and maintain

15  proper clear width of the routes of travel through public areas of the store interior, in violation of

16  1991 ADAAG § 4.3.3; 2010 Standards § 403.5.  (Mem. 8.)  Plaintiff alleges the beverage cups

17  were stacked high and it was hard for Plaintiff to reach them while balancing himself with his

18  cane, (Compl. ¶ 10(d)), and thus argues Defendants failed to position the customer-use beverage

19  cups within proper reach ranges, in violation of 1991 ADAAG §§ 4.27.3, 4.2.5, 4.2.6; 2010

20  Standards §§ 205.1 and 308.1.  (Mem. 8.)  Finally, Plaintiff alleges the transaction counter was too

21  high, (Compl. ¶ 10(e)), and argues Defendants failed to provide a properly configured accessible

22  portion of the sales counter, in violation of 1991 ADAAG § 7.2(1); 2010 Standards §§ 904, *et seq.*

23  (Mem. 8.)

24          The Court notes that even on default judgment in ADA cases, plaintiffs often present the

25  results of an investigation by an independent consultant, such as a construction expert that takes

26  measurements, or at least a more detailed declaration of the plaintiff in support of the claim that

27  there is an architectural barrier.  Nonetheless, taking the allegations as true for purposes of default

28  judgment as presented by Plaintiff in his complaint, and based on the applicable laws and

regulations, the Court finds Plaintiff has sufficiently alleged and demonstrated the presence of architectural barriers present at the Facility which violate the ADA.

        2)       Whether Removal of the Architectural Barrier is Readily Achievable

Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C § 12181(9). Factors to be considered in determining whether such removal is readily achievable include: "(A) the nature and cost of the action needed under this chapter; (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity." Id. Federal regulations provide examples of readily achievable steps to remove barriers including: installing ramps, making curb cuts in sidewalks and entrances, widening doors, eliminating a turnstile or providing an alternative accessible path, and creating designated accessible parking spaces, among other examples. 28 C.F.R. § 36.304(b).

The Ninth Circuit has not decided whether the plaintiff or defendant carries the burden of proving that removal of an architectural barrier is readily achievable. The majority of district courts in the circuit have applied the Tenth Circuit's burden-shifting framework developed in Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship I, 264 F.3d 999 (10th Cir. 2001). See Moore v. Robinson Oil Corp., 588 F. App'x 528, 530 (9th Cir. 2014); Vogel, 992 F. Supp. 2d at 1010; Ngoc Lam Che v. Boatman-Jacklin, Inc., No. 18-CV-02060-NC, 2019 WL 3767451, at *2 (N.D. Cal. Aug. 9, 2019). Under the Tenth Circuit's framework, the plaintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable, and then the burden shifts to the defendant who bears the ultimate burden of persuasion regarding the affirmative defense that the suggested method is not readily achievable.

1 | Vogel, 992 F. Supp. 2d at 1010 (citing Colorado Cross, 264 F.3d at 1006).

2 |     Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility

3 | without much difficulty or expense, that the cost of removing the architectural barriers does not

4 | exceed the benefits under the particular circumstances, and that Defendants violated the ADA by

5 | failing to remove those barriers, when it was readily achievable to do so.  (Compl. ¶ 21.)  Plaintiff

6 | alternatively argues if it was not readily achievable for Defendants to remove the Facility's

7 | barriers, then Defendants violated the ADA by failing to make the required services available

8 | through alternative methods, which are readily achievable.  (Compl. ¶ 22.)

9 |     Plaintiff argues that the question of whether removal of a barrier is readily achievable is an

10 | affirmative defense that is waived unless raised.[3]  The Court finds that Plaintiff's allegation that

11 | the removal of the barriers is readily achievable is sufficient to satisfy his burden of production for

12 | purposes of default judgment.  See Vogel, 992 F. Supp. 2d at 1011 (allegation that removal of

13 | barrier readily achievable sufficient for default judgment); Johnson v. Hall, No. 2:11-CV-2817-

14 | GEB-JFM, 2012 WL 1604715, at *3 (E.D. Cal. May 7, 2012) (same); Johnson v. Beahm, No.

15 | 2:11-CV-0294-MCE-JFM, 2011 WL 5508893, at *3 (E.D. Cal. Nov. 8, 2011) (same); but see

16 | Dytch, 2018 WL 2230945, at *3–4 (finding Eitel factors overall do not weigh in favor of granting

17 | default judgment because Plaintiff did not meet burden by only generally alleging defendants have

18 | the financial resources to remove barriers without much difficulty or expense, and make the

19 | facility accessible to the disabled, however did not allege, e.g., how feasible the changes are, how

20 | much it would cost to make accessible, the impact of any required changes on the facility, or other

21 | factors relevant to assessing whether the requested changes are easily accomplishable and able to

22 |

23 | [3]  Plaintiff proffers the Ninth Circuit has held that whether the removal of barriers is "readily achievable" is in fact
an affirmative defense, and must be pled by the answering party.  (Mot. at 3.)  However, specifically, what the Ninth
24 | Circuit held in the case cited by Plaintiff is that whether an accommodation "fundamentally alters" a service or
facility is an affirmative defense.  Lentini v. California Ctr. for the Arts, Escondido, 370 F.3d 837, 845 (9th Cir.
25 | 2004) ("Whether an accommodation fundamentally alters a service or facility is an affirmative defense."); see also
Wilson v. Haria & Gogri Corp., 479 F. Supp. 2d 1127, 1133 (E.D. Cal. 2007) ("The Ninth Circuit has yet to rule on
26 | this issue, but courts are generally in agreement that whether barrier removal is readily achievable is an affirmative
defense . . . defendant has failed to plead that barrier removal is not readily achievable in its answer.  Accordingly,
27 | the defense is waived.") (citing Lentini, 370 F.3d at 845); see also Dytch, 2018 WL 2230945, at *3 (N.D. Cal. May
16, 2018) ("Contrary to Plaintiff's assertion, whether a modification is 'readily achievable' is not an affirmative
28 | defense, but rather an element of the case-in-chief for which the plaintiff bears the burden.").

1  be carried out without much difficulty or expense).

2       Defendants have failed to meet their burden because they have failed to appear and present

3  any defense in this matter.   For purposes of default judgment, the Court accepts Plaintiff's

4  allegations as true and finds Plaintiff has sufficiently established that removal of the architectural

5  barriers he encountered is readily achievable.

6       **b.**    **California State Law Claims**

7       Plaintiff also brings a state law claim for violation of the California's Unruh Civil Rights

8  Act.  (Compl. ¶¶ 34-41.)  The Unruh Act provides that "[a]ll persons within the jurisdiction of this

9  state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal

10  accommodations, advantages, facilities, privileges, or services in all business establishments of

11  every kind whatsoever."  Cal. Civ. Code § 51(a).  Unlike the ADA, the Unruh Act permits the

12  recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum

13  of at least $4,000.00 per violation.  Cal. Civ. Code § 52(a); Molski v. M.J. Cable, Inc., 481 F.3d

14  724, 731 (9th Cir. 2007); Vogel, 992 F. Supp. 2d at 1011.  After passage of the ADA in 1990, the

15  Unruh Civil Rights Act was amended to provide that a violation of the ADA constitutes a violation

16  of the Unruh Civil Rights Act.  Pickern v. Best W. Timber Cove Lodge Marina Resort, 194 F.

17  Supp. 2d 1128, 1131 (E.D. Cal. 2002); Cal. Civ. Code § 54.1(d) ("A violation of the right of an

18  individual under the Americans with Disabilities Act of 1990 . . . also constitutes a violation of this

19  section.").

20       As Plaintiff has stated a cause of action entitling him to relief under the ADA, Plaintiff has

21  also stated a claim entitling him to relief under the Unruh Act.  See Vogel, 992 F. Supp. 2d at

22  1011-12; Villegas v. Beverly Corner, LLC, No. 216CV07651CASSSX, 2017 WL 3605345, at *5

23  (C.D. Cal. Aug. 18, 2017); Johnson v. Singh, No. 2:10-CV-2547 KJM JFM, 2011 WL 2709365, at

24  *1–4 (E.D. Cal. July 11, 2011).  For all of the above stated reasons, the Court finds the second and

25  third Eitel factors weigh in favor of granting default judgment in favor of Plaintiff on the ADA

26  claim and the Unruh Civil Rights Act claim.

27       3.    <u>The Sum of Money at Stake in the Action</u>

28       The sum of money at stake in this action also weighs in favor of granting default

judgment.  Default judgment is disfavored where large amounts of money are involved, or the award would be unreasonable in light of the defendant's actions.  G & G Closed Circuit Events, LLC v. Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012); PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) ("Under the third Eitel factor, the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.").  In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees in the amount of $3,728.00, and costs of $707.00, for a total award of $8,435.00.  (Mot. 9.)  This is not an excessive amount of money, nor does it seem unreasonable in light of the allegations contained in the complaint.  See Vogel, 992 F. Supp. 2d at 1012 (citing Moore v. Cisneros, No. 1:12–cv–00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13, 2012) (noting an award of $10,119.70 on default judgment in ADA discrimination case was "not a relatively large sum of money, nor d[id] it appear unreasonable")); Johnson v. Huynh, No. CIV S–08–1189 JAM DAD, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009) (holding injunctive relief and an award of $12,000.00 for ADA violations on default judgment was "relatively small award of damages").

Further, the Court recommends the attorneys' fees should be reduced.  For these reasons, the Court finds this Eitel factor weighs in favor of granting default judgment in favor of Plaintiff against Defendants.

### 4.    The Possibility of a Dispute Concerning Material Facts

The next Eitel factor considers the possibility of dispute concerning material facts.  As discussed above, Plaintiff has sufficiently alleged disability discrimination under the ADA and the Unruh Act by demonstrating his encountering of architectural barriers at the Facility.  The Court found above that the proofs of service were insufficient to demonstrate Defendants were properly served, and this factor would weigh against granting default judgment if service not shown.  However, if the District Judge finds service has been effectuated, the Court would then find this factor weighs in favor of entering default judgment as then there would be no possibility of dispute regarding the material facts due to the factual allegations in the complaint being taken as true upon Defendant's default.  See Garamendi, 683 F.3d at 1080; PepsiCo, Inc. v. California Sec. Cans, 238

F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.").

Accordingly, the Court finds this <u>Eitel</u> factor weighs in favor of granting default judgment in favor of Plaintiff against Defendant, if the District Judge finds service to be sufficient.

5.      Whether the Default Was Due to Excusable Neglect

The Court found above that service has not been sufficiently demonstrated on the Defendants in this action, and thus the Court finds this factor weighs against granting default judgment.

If the District Judge determines service to be adequate, the Court would find this factor weighs in favor of granting default judgment as Defendants have failed to file a responsive pleading or otherwise appear in this action.  See <u>Shanghai Automation Instrument Co. v. Kuei</u>, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) ("The default of defendant . . . cannot be attributed to excusable neglect.  All were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion.").

6.      The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible."  <u>Eitel</u>, 782 F.2d at 1472.

The Court found above that service has not been sufficiently demonstrated on the Defendants in this action, and thus the Court finds this factor weighs against granting default judgment.  If the District Judge determines service to be adequate, the Court would find the policy favoring decisions on the merits would not weigh against entering default judgment where, as here, the Defendants' failure to appear makes a decision on the merits impossible.  Given the prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the allegations contained in complaint, granting default judgment in this case would not violate the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits, if service was adequate.  See <u>PepsiCo</u>, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.  Under Fed. R. Civ. P.

55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

///

### 7.    The Eitel Factors Weigh in Favor of Granting Default Judgment

If the District Judge finds service to be adequate, the Court would find the Eitel factors weigh in favor of granting default judgment and would recommend that Plaintiff's motion for default judgment be granted.

### C.    Relief Requested

In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of $4,000.00, attorneys' fees in the amount of $3,728.00, and costs of $707.00, for a total award of $8,435.00.  (Compl. 9.)  If the District Judge finds service adequate, the Court would recommend awarding the statutory fees and costs as requested, and would recommend reducing the award of attorneys' fees.

### 1.    Injunctive Relief

Plaintiff seeks an injunction compelling Defendants to comply with the ADA by removing the itemized barriers that he personally encountered.  (Mot. 4-6.)  The ADA provides that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required" by the ADA.  42 U.S.C. § 12188(a)(2).  A court may grant injunctive relief for violations of the Unruh Act under § 52.1(h). Vogel, 992 F. Supp. 2d at 1015; Cal. Civ. Code § 52.1 ("An action brought pursuant to this section is independent of any other action, remedy, or procedure that may be available to an aggrieved individual under any other provision of law.").  "Injunctive relief may be granted 'when architectural barriers at defendant's establishment violate the ADA.' "  Johnson v. Pizano, No. 2:17-CV-1655 TLN DB, 2019 WL 2499188, at *6 (E.D. Cal. June 17, 2019) (quoting Vogel, 992 F.Supp.2d at 1015).

Pursuant to federal and California law, Plaintiff is entitled to the removal of those architectural barriers which he encountered on his visit to the Facility that violated the ADA. Therefore, an injunction should issue requiring Defendant to remove barriers that are in violation

1   of the ADA and the ADAAG, if service is found to be adequate by the District Judge.

2           2.   Statutory Damages

3           Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the

4   California Unruh Civil Rights Act.  The Unruh Act provides for minimum statutory damages of

5   $4,000.00 for each violation.  Cal. Civ. Code § 52(a).  Under the Unruh Act, statutory damages

6   may be recovered if a violation of one or more construction related accessibility standards denied

7   the plaintiff full and equal access to the place of public accommodation on a particular occasion.

8   Cal. Civ. Code § 55.56(a).  A plaintiff is denied full and equal access only when they personally

9   encountered the violation on a specific occasion.  Cal. Civ. Code § 55.56(b).  A litigant need not

10  prove any actual damages to recover statutory damages of $4,000.00.  Molski, 481 F.3d at 731.

11          As discussed above, Plaintiff sufficiently alleged violation of the ADA which established a

12  violation of the Unruh Act, and thus the Court finds that Plaintiff is entitled to statutory damages in

13  the amount of $4,000.00, if service is found to be adequate by the District Judge.

14          3.   Attorneys' Fees and Costs

15          Plaintiff is requesting attorneys' fees in the amount of $3,728.00, and costs of $707.00, for

16  a total award of $4,435.00 in fees and costs. (Compl. 9; Decl. Tanya E. Moore Supp. Mot. Default

17  J. ("Moore Decl.") ¶¶ 3-14, ECF No. 12-2; Ex. A, ECF No. 12-3.)  Pursuant to 42 U.S.C. § 12205,

18  the party that prevails on a claim brought under the ADA may recover "a reasonable attorney's fee,

19  including litigation expenses," at the discretion of the Court.  "[U]nder federal fee shifting statutes

20  the lodestar approach is the guiding light in determining a reasonable fee." Antoninetti v. Chipotle

21  Mexican Grill, Inc., 643 F.3d 1165, 1176 (9th Cir. 2010) (internal punctuation and citations

22  omitted).  The Ninth Circuit has explained the lodestar approach as follows:

23          The lodestar/multiplier approach has two parts.  First a court determines the lodestar
24          amount by multiplying the number of hours reasonably expended on the litigation by
            a reasonable hourly rate.  The party seeking an award of fees must submit evidence
25          supporting the hours worked and the rates claimed.  A district court should exclude
            from the lodestar amount hours that are not reasonably expended because they are
26          excessive, redundant, or otherwise unnecessary.  Second, a court may adjust the
            lodestar upward or downward using a multiplier based on factors not subsumed in the
27          initial calculation of the lodestar. The lodestar amount is presumptively the
            reasonable fee amount, and thus a multiplier may be used to adjust the lodestar
28          amount upward or downward only in rare and exceptional cases, supported by both
            specific evidence on the record and detailed findings by the lower courts that the

1    lodestar amount is unreasonably low or unreasonably high.

2    Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041,1045 (9th Cir. 2000) (internal citations

3    and punctuation omitted).

4         Under the lodestar method, the court will first determine the appropriate hourly rate for the

5    work performed, and that amount is then multiplied by the number of hours properly expended in

6    performing the work.  Antoninetti, 643 F.3d at 1176.  The district court has the discretion to make

7    adjustments to the number of hours claimed or to the lodestar, but is required to provide a clear but

8    concise reason for the fee award.  Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).  The

9    lodestar amount is to be determined based upon the prevailing market rate in the relevant

10   community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).

11        a.      **Reasonable hourly rate**

12        Counsel Tanya E. Moore ("Moore"), has been in practice for over twenty years, and her

13   normal billing rate for ADA related work is $495.00.  (Moore Decl. ¶¶ 3-4.)  However, Moore is

14   only seeking an hourly rate of $300.00 for her work on this matter.  (Id. at ¶ 6.)  Plaintiff is seeking

15   an hourly rate of $115.00 for the work of paralegals Whitney Law and Isaac Medrano, who

16   normally bill at a higher rate.  (Id. at ¶¶ 10-11.)

17        The lodestar amount is to be determined based upon the prevailing market rate in the

18   relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division of

19   the Eastern District of California.  "To inform and assist the court in the exercise of its discretion,

20   the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's

21   own affidavits—that the requested rates are in line with those prevailing in the community for

22   similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465

23   U.S. at 895 n.11.

24        The undersigned has already found $300.00 per hour to be a reasonable rate for counsel

25   Moore.  Trujillo v. Lakhani, No. 117CV00056LJOSAB, 2017 WL 1831942, at *8 (E.D. Cal. May

26   8, 2017).  Further, in the context of cases alleging violations of the ADA, courts in this district

27   have awarded fees ranging from $250.00 to $325.00 per hour within recent years.  See Cervantes

28   v. Vargas, No. 117CV00923LJOSKO, 2018 WL 2455615, at *7 (E.D. Cal. June 1, 2018)

(awarding $275.00 per hour to attorney with nine years of experience and representation in 275 ADA actions); <u>Block v. Christian</u>, No. 1:16–cv–00650–LJO–SKO, 2017 WL 5248402, at *4 (E.D. Cal. Nov. 13, 2017) (finding $325.00 per hour to be a reasonable hourly rate for an attorney with twenty-four years of experience in general litigation and twelve years working on ADA cases); <u>Block v. Starbucks Corp.</u>, No. 115CV00991DADCKD, 2018 WL 4352906, at *7 (E.D. Cal. Sept. 11, 2018) (same); <u>Trujillo v. Singh</u>, No. 1:16–cv–01640–LJO–EPG, 2017 WL 1831941, at *3 (E.D. Cal. May 8, 2017) (finding $300.00 per hour to be a reasonable hourly rate for an attorney with over fifteen years experience); <u>Tarango v. City of Bakersfield</u>, No. 1:16-CV-0099-JLT, 2017 WL 5564917, at *6 (E.D. Cal. Nov. 20, 2017) (awarding $250.00 per hour to attorney with less than six-years of experience but extensive experience in disability discrimination, $275.00 per hour for attorney with eight years of experience, and $300.00 for attorney with ten years of experience); <u>O'Campo v. Ghoman</u>, No. 208CV1624KJMDBPS, 2017 WL 3225574, at *7 (E.D. Cal. July 31, 2017) (noting various cases in Sacramento awarding $300.00 per hour for attorneys with over twenty years ADA experience, and awarding $300.00 per hour in ADA action in Sacramento division for both an attorney with over thirty years of experience, and attorney with nearly twenty years of experience); <u>Anglin v. Barron</u>, No. 117CV00974AWIJLT, 2017 WL 5713375, at *8 (E.D. Cal. Nov. 28, 2017) (awarding $300.00 per hour rather than the requested rate of $425.00 where counsel had nineteen years of experience devoted exclusively to disability law); <u>Johnson v. Patel</u>, No. 217CV00573KJMCKD, 2017 WL 3953949, at *5 (E.D. Cal. Sept. 8, 2017) (same); <u>Arroyo v. J.S.T. LLC</u>, No. 118CV01682DADSAB, 2019 WL 4877573, at *14 (E.D. Cal. Oct. 3, 2019) (same in addition to awarding $250 per hour for attorneys with eight years of experience), <u>report and recommendation adopted,</u> No. 118CV01682DADSAB, 2020 WL 32322 (E.D. Cal. Jan. 2, 2020).

Accordingly, the Court recommends that Plaintiff receive the requested $300.00 per hour for the services of counsel Moore.  The Court also recommends that Plaintiff receive the requested $115.00 per hour for the services of the paralegals, as the undersigned has previously found to be reasonable.  <u>Trujillo</u>, 2017 WL 1831942, at *8; <u>see also</u> <u>Durham v. FCA US LLC</u>, No. 2:17-CV-00596-JLT, 2020 WL 243115, at *9 (E.D. Cal. Jan. 16, 2020) ("Generally, paralegal rates within

the Fresno Division of the Eastern District range between $75 to approximately $150.00.");
Tarango v. City of Bakersfield, No. 1:16-CV-0099-JLT, 2017 WL 5564917, at *8 (E.D. Cal. Nov. 20, 2017) (same); AT&T Mobility LLC v. Yeager, No. 2:13-CV-00007 KJM DB, 2018 WL 1567819, at *5 (E.D. Cal. Mar. 30, 2018) (reducing rate to $100 per hour, finding it to be "the reasonable hourly rate for paralegals in this division.").

### b.       Reasonable number of hours

Counsel Moore proffers she expended 8.9 hours, and the timesheet reflects the hours were expended reviewing information from the client; drafting the complaint; reviewing client correspondence regarding claims; and reviewing the motion for default judgment. (Moore Decl. ¶ 9; Ex. A, ECF No. 12-3.) The undersigned has previously noted that "[b]ased upon the Court's familiarity with the actions filed by Ms. Moore's firm in this court, the Court is aware that [Moore uses a] form complaint [that] is substantially similar to dozens of other actions filed in this district," and previously found "time billed [to be] excessive and duplicative and .5 hours would be a reasonable amount of time for Ms. Moore to spend on preparing, researching, reviewing, and drafting the complaint." Trujillo, 2017 WL 1831942, at *7. Here specifically, Moore proffers that spending .5 hours corresponding with the client prior to the complaint, .5 hours corresponding and preparing for "investigation" (the 5 hour entry discussed below), 1.4 hours preparing for and drafting the complaint (including researching parties), and .5 hours for additional party research and conflict check. (Ex. A, ECF No. 12-3 at 2.) The Court finds these expenditures totaling 2.9 hours to be excessive, and shall reduce the total hours by 1.9, as 1 hour total for these tasks is reasonable. Trujillo, 2017 WL 1831942, at *7.

The largest time entry by Moore is for 5 hours, 4 hours of which is for time spent driving to the Facility, and .5 hours at the Facility, and .5 hours adding notes to the file. (Ex. A, ECF No. 12-3 at 2.) The Court finds no discernible benefit or substantive information contained in the complaint or the motion for default judgment that reflects the usefulness of this site visit by counsel. The complaint and motion for default judgment only contain the basic facts as alleged by Plaintiff as to his specific visit to the Facility. Accordingly, the Court finds the time expended on such site visit to not be reasonable, and reduces the 5 hour entry by 4.5 hours, to .5 hours total for

1    the site visit and recordation of notes concerning the visit.  The Court rejects the request to provide

2    fees for additional time spent attending the hearing on this motion.  As explained above, counsel

3    Moore appeared to have been attending the hearing in her vehicle, did not have the case file or case

4    information available for the hearing, and was unable to address the Court's concerns regarding

5    service of process in this action.

6        The Court finds the remainder of the time expenditures by Moore to be reasonable.

7    Accordingly, the Court finds that 2.5 hours is reasonable for counsel Moore's work on this action.

8        Paralegal Whitney Law expended 6.3 hours on this litigation.  (Decl. Whitney Law Supp.

9    Mot. Default J. ("Law Decl.") ¶ 4; Ex. A.)  Paralegal Whitney Law expended 5.2 hours drafting

10   the motion for default judgment.  The Court finds that aside from a few minor aspects of the

11   declarations and the incorporation of the facts from paragraph 10 of the complaint into the motion,

12   the entire filing and declarations appear almost entirely boilerplate and devoid of specific

13   arguments or factual details pertaining to this case.  The Court finds 1.5 hours to be reasonable to

14   complete drafting the motion before the Court, and thus deducts 3.7 hours from the time expended

15   on the motion for default judgment.  Accordingly, the Court finds paralegal Whitney Law

16   reasonably expended 2.6 hours on this litigation.

17       Paralegal Isaac Medrano expended 2.9 hours on this litigation.  (Decl. Isaac Medrano Supp.

18   Mot. Default J. ("Medrano Decl.") ¶ 4.)  The Court finds that approximately .5 hours expended

19   were clerical tasks, or duplicative because of the two Defendants in this action, including the

20   calendaring of deadlines, correspondence with process servers, drafting proof of service

21   documents, and drafting letters of default.  See Missouri v. Jenkins by Agyei, 491 U.S. 274, 288

22   n.10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless

23   of who performs them.").  The Court finds paralegal Isaac Medrano reasonably expended 2.4 hours

24   in this litigation.

25       c.    **Reasonable Attorneys' Fee Award**

26       The Court finds that: (1) counsel Moore reasonably expended 2.5 hours in this action at a

27   reasonable rate of $300.00 per hour, for a total of $750.00; (2) paralegal Whitney Law reasonably

28   expended 2.6 hours in this action at a reasonable rate of $115.00 per hour, for a total of $299.00;

and paralegal Isaac Medrano reasonable expended 2.4 hours in this litigation at a reasonable rate of $115.00 per hour, for a total of $276.00.

Accordingly, the Court recommends that Plaintiff be awarded attorneys' fees in the amount of $1,325.00.

**d.      Costs**

Both the ADA and Unruh Act authorize the award of costs for an action.  See 42 U.S.C. § 12205; Cal. Civ. Code § 52(a).  Plaintiff seeks costs of $402.00 for filing fees, and $305.00 for service expenses.  (Moore Decl. ¶¶ 12-13; Ex. B, ECF No. 12-3 at 5-9.)  The Court notes that the two of the service receipts reflect charges for a bad address in the total amount of $165.00.  (Ex. B, ECF No. 12-3 at 6-7.)  If service is found to be ultimately adequate, the Court finds these expenses to be reasonable and recommends awarding Plaintiff a total of $707.00 in costs.

**V.**

**CONCLUSION AND RECOMMENDATION**

The entry of default judgment is within the discretion of the Court.  See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Court finds service to be inadequate and recommends the motion for default judgment be denied without prejudice.  If the District Judge finds service to be adequate, the Court would then find the Eitel factors weigh in favor of granting default judgment, and would recommend granting the motion for default judgment with a reduction in attorneys' fees as outlined below.

Based upon the foregoing, the Court HEREBY RECOMMENDS that:

1.      Plaintiff's motion for default judgment be DENIED for inadequate service of the summons and complaint;

2.      Alternatively, if the District Judge finds service adequate, the Court recommends Plaintiffs' motion for default judgment be GRANTED as follows:

a.   Plaintiff be AWARDED statutory damages in the amount of $4,000.00;

b.   Plaintiff be AWARDED reduced attorneys' fees in the amount of $1,325.00;

c.   Plaintiff be AWARDED costs in the amount of $707.00; and

d.   Plaintiff be GRANTED an injunction requiring Defendants to provide disability

access by removing architectural barriers at 403 North Mercey Springs Road, Los Banos, California 93635, in accordance with the Americans with Disabilities Act and the Americans with Disabilities Act Accessibility Guidelines (ADAAG), by:

    i.  Providing an accessible route of travel with a proper level surface between elements of the Facility in accordance with 2010 ADAAG Standards §§ 206.2.2 and 403, *et seq.*;

    ii.  Providing and maintaining proper clear width of the routes of travel through public areas of the store interior at the Facility, in accordance with 2010 ADAAG Standards § 403.5;

    iii.  Providing customer-use beverage cups within proper reach ranges, in accordance with 2010 ADAAG Standards §§ 205.1 and 308.1; and

    iv.  Providing a properly configured accessible portion of the sales counter, in accordance with 2010 ADAAG Standards §§ 904, *et seq.*

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

///

///

///

///

///

1    Further, Plaintiff is HEREBY ORDERED to serve a copy of this findings and

2  recommendations on Defendants **within three (3) days** of entry.

3

4  IT IS SO ORDERED.

5  Dated:   **August 26, 2021**

   UNITED STATES MAGISTRATE JUDGE